IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| EVENS CLAUDE | NO.  11-90 |

DuBOIS, J.                                                                                                          June 18, 2014

# M E M O R A N D U M

## I.     INTRODUCTION

On October 3, 2011, defendant plead guilty to conspiracy to utter approximately $10,700 in counterfeit $100 obligations, in violation of 18 U.S.C. § 371, and uttering counterfeit obligations, in violation of 18 U.S.C. § 472.  Presently before the Court is defendant's *pro se* Motion to Set Aside, Vacate or Correct Sentence by a Person in Federal custody pursuant to 28 U.S.C. § 2255, in which he argues that his attorney, Carina Laguzzi, was ineffective for failing to inform him of the immigration consequences of his guilty plea.  For the following reasons, defendant's Motion is denied.

## II.    BACKGROUND

On July 12, 2010, defendant, Evens Claude, was indicted in the Southern District of Texas for conspiracy to utter approximately $10,700 in counterfeit $100 obligations, in violation of 18 U.S.C. § 371, and uttering counterfeit obligations, in violation of 18 U.S.C. § 472.  Gov't Resp. to Def.'s Pet. at 1-2.  Pursuant to Federal Rule of Criminal Procedure 20, the U.S. Attorney for the Southern District of Texas approved the transfer of the case for guilty plea and sentencing to the Eastern District of Pennsylvania on February 1, 2011.  Consent to Transfer, Feb. 16, 2011.

The Court appointed Carina Laguzzi, Esq., to represent defendant on April 5, 2011. Appointment of Counsel Hr'g, Apr. 5, 2011.

At a change-of-plea hearing on October 3, 2011, the Court accepted defendant's open guilty plea after a colloquy pursuant to Federal Rule of Criminal Procedure 11(b). Because defendant is a Haitian national, the Court questioned defendant about the potential risk to his immigration status as follows:

> THE COURT: All right. Are there any collateral consequences of a plea of which you're aware, Ms. Laguzzi?
>
> MS. LAGUZZI: Your Honor, the only thing that I can think of is that a conviction may have some bearing on an immigration status, but I'm not sure because - - my client is a legal permanent resident of the U.S. and he has some prior convictions, so I don't know if that's already been ruled out. Also, as a Haitian national, the U.S. does not deport to Haiti. But that's the only collateral consequence I can think of.
>
> THE COURT: All right, I'll question him on that. You're on your feet, Ms. Foulkes?
>
> MS. FOULKES: Yes, your Honor. I just - - I think it would be a good idea to question him. The understanding that I have is that, while it is true that his deportation order has been stayed under a petition for asylum - - or, I'm sorry, it's not asylum, it's a petition for the Convention Against Torture, that does not necessarily mean that for all times that would be the set of affairs. So this may have some consequences that he should be colloquied on.
>
> THE COURT: All right.
>
> MS. FOULKES: But, in any event, there's nothing that would happen in the near future because, as Ms. Laguzzi said correctly, no one is getting deported to Haiti at this point, it's not a near-term issue at all.
>
> THE COURT: Well, my responsibility is not to limit this questioning to near-term consequences.
>
> MS. FOULKES: That's correct, that's correct.
>
> THE COURT: All right. I gather from what Ms. Laguzzi said that you were born in Haiti, is that correct?

2

THE DEFENDANT: Yes.

THE COURT: And you're a Haitian national?

THE DEFENDANT: Yes.

THE COURT: What is your status in the United States?

THE DEFENDANT: I'm a legal . . .

THE COURT: You're - - you're - -

THE DEFENDANT: I'm a legal here, I have, you know - -

THE COURT: A legal alien?

THE DEFENDANT: Right.

THE COURT: You have a prior conviction, I know of one, you mentioned a conviction in the District Court, Federal Court in Massachusetts.

THE DEFENDANT: Yes.

THE COURT: Do you have any other convictions?

THE DEFENDANT: Yes, both of them from Massachusetts.

THE COURT: How many convictions do you have all tolled?

THE DEFENDANT: Two.

THE COURT: Well, it is possible that if I accept your guilty plea and you stand convicted of a felony offense in this Court, and that's the result of a guilty plea, it is possible that you will be removed or deported to Haiti. I do not know the answer to that question, but you should know that with a conviction here and notwithstanding what's happened to you in the past based on your convictions in Massachusetts, with a conviction in this Court, that might subject you to removal or deportation, two words meaning the same thing, deportation to Haiti - -

THE DEFENDANT: Yes.

THE COURT: - - do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about that?

3

>THE DEFENDANT:  No.
>
>THE COURT:  Have you discussed this with Ms. Laguzzi, the issue of removal or deportation?
>
>THE DEFENDANT:  No.
>
>THE COURT:  Do you want to take some time, a few minutes or longer to discuss this issue now?
>
>THE DEFENDANT:  I understood the situation.
>
>THE COURT:  Do you have immigration counsel in - - at all?
>
>THE DEFENDANT:  No.
>
>THE COURT:  All right. Ms. Laguzzi, do you wish to discuss this issue with the Defendant?
>
>MS. LAGUZZI:  No, your Honor, I think that the colloquy covers it and we also had discussed this when I first was representing Mr. Claude.
>
>THE COURT:  All right. Mr. Claude, the long and the short of all this is that, if I accept your guilty plea, you might be subject to removal or deportation to Haiti and you understand that?
>
>THE DEFENDANT:  Yes.
>
>THE COURT:  Do you still wish to go forward with your guilty plea?
>
>THE DEFENDANT:  Yes.

Tr. 10/3/11 at 23:16-27:5.

On January 31, 2012, the Court sentenced defendant to eighteen-months imprisonment, and on February 13, 2012, Ms. Laguzzi filed a timely appeal, arguing that the Court erred in not granting defendant a two-level reduction in his offense level for acceptance of responsibility under section 3E1.1 of the U.S. Sentencing Guidelines.  *United States v. Claude*, 503 F. App'x 166, 167 (3d Cir. 2012).  The U.S. Court of Appeals for the Third Circuit affirmed the sentence on November 1, 2012, *id.* at 168, and defendant's conviction became final on January 30, 2013.

On March 18, 2014, defendant filed the pending *pro se* Motion to Set Aside, Vacate, or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. § 2255, arguing that his counsel was ineffective for failing to inform him about the risk of deportation and that he "would have chosen to go to trial" had she done so.  Pet. to Vacate Conviction at 5.  For the reasons that follow, the Motion is denied.

### III.   LEGAL STANDARD

To establish ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms" and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88, 92 (1984).  "[S]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When assessing the reasonableness of counsel's performance, courts should "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  "[I]n cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, to establish prejudice, a defendant [must] show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Missouri v. Frye*, 132 S.Ct. 1399, 1409 (2012) (quoting *Hill v. Lockhard*, 474 U.S. 52, 59 (1985)).  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome.'"  *Strickland*, 466 U.S. at 694.

### IV.   DISCUSSION

Defendant's § 2255 Motion is without merit because, even assuming defendant could show that Ms. Laguzzi's failure to apprise him of potential immigration consequences fell below an objective standard of reasonableness, he cannot prove that he was prejudiced by that failure. The record is unclear as to scope and content of Ms. Laguzzi advice regarding the immigration consequences of defendant's plea.[1] However, the Court need not address this issue because the record establishes that defendant was not prejudiced by Ms. Laguzzi's conduct. *Strickland*, 466 U.S. at 670 ("A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.").

A defendant cannot show prejudice when he acknowledges during a Rule 11 colloquy that he understands the consequences of his plea. *See, e.g.*, *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (holding that counsel was not ineffective for allegedly promising a defendant a certain sentence because the defendant was advised during a colloquy that he might be sentenced to more time than he was promised); *Watson v. United States*, No. 04-cr-392, 2009

---

[1] What advice Ms. Laguzzi provided defendant regarding the immigration consequences and when she gave such advice remains unclear. Ms. Laguzzi stated at the change-of-plea hearing that she had informed defendant of the risk of deportation when she "first represented him," but the time to which she is referring is unclear. Tr. 10/3/11 at 26:18-22. Defendant claimed in his Motion that, prior to the change-of-plea hearing, Ms. Laguzzi told him explicitly that he would not be deported as a result of a guilty plea. Pet. to Vacate Conviction at 1. Contrary to that statement, at the change-of-plea hearing, defendant stated that he had not discussed immigration consequences with Ms. Laguzzi at all. Tr. 10/3/11 at 26:9-11.

These contested facts undermine his assertion that he was prejudiced. A defendant cannot show prejudice when the record contradicts the assertions set forth in his or her § 2255 Motion. *See Donna v. United States*, No. 10-1607, 2011 WL 322636, at *6 (D.N.J. Jan. 31, 2011) (holding that petitioner could not demonstrate prejudice through conclusory assertions that were contradicted by the record); *see also Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985) ("If the record . . . conclusively negates the factual predicates asserted by [the defendant] in support of his motion for post-conviction relief . . . the district court did not abuse its discretion in electing not to conduct an evidentiary hearing.").

WL 2393450, at *4 (E.D. Pa. Aug. 4, 2009) ("[A]ny Sixth Amendment claim of ineffective counsel is overcome by the extensive colloquy of the Court during Petitioner's plea hearing in which it is ensured that Petitioner was aware [of the consequences] that could result from the charge against him."); *Sanchez-Rios v. United States*, No. 07-cv-3048, 2008 WL 527038, at *5 (D.N.J. Dec. 17, 2008) ("Petitioner's [ineffective-assistance-of-counsel claim] fails for lack of prejudice because this Court's colloquy . . . clearly explained the possibility of a different outcome . . ."); *see also United States v. Hernandez-Monreal*, 404 Fed. App'x 714, 715 (4th Cir. 2010) (holding that a petitioner failed to show prejudice where the record established he had affirmatively acknowledged that his guilty plea carried a risk of deportation); *Mendoza v. United States*, 774 F. Supp. 2d 791, 799 (E.D. Va. 2011) ("[P]etitioner's sworn acknowledgement [that he understood the immigration consequences of his plea] is, by itself, dispositive of the prejudice analysis.").

In this case, the Court engaged in an extensive colloquy in which defendant stated three times that he understood there was a potential for deportation if he entered a guilty plea. Specifically, during the colloquy, the Court informed defendant multiple times that the Court's acceptance of his guilty plea "might subject him to removal or deportation." Further, defendant affirmatively acknowledged this risk and stated that he had no questions:

> THE COURT:  Well, it is possible that if I accept your guilty plea . . . you will be removed or deported to Haiti. . . . [Y]ou should know that with a conviction . . . in this Court, that might subject you to removal or deportation. . .
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  – do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Do you have any questions about that?

7

>THE DEFENDANT: No.

Tr. 10/3/11 at 25:19-26:8.

Subsequent to this exchange, the Court again reiterated the potential immigration consequences of a guilty plea, and defendant again explicitly stated that he understood the consequences and wished to proceed with the guilty plea:

>THE COURT: All right. Mr. Claude, the long and the short of all this is that, if I accept your guilty plea, you might be subject to removal or deportation to Haiti and you understand that?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Do you still wish to go forward with your guilty plea?
>
>THE DEFENDANT: Yes.

Tr. 10/3/11 at 26:23-27:5.

Moreover, a defendant cannot complain about a failure to consult with counsel about the consequences of a plea where he "declined an opportunity to ask additional questions or speak with his lawyer before entering a plea." *United States v. Felder*, 563 F. Supp. 2d 160, 166 (D.D.C. 2008); *see also Ross v. Miller*, No. 1:10-cv-01185, 2011 WL 2292146, at *10 (N.D. Ohio May 10, 2011) (finding no prejudice where "[defendant] was afforded the opportunity to consult his attorney about [the consequences of waiving his jury right] and declined to do so."). In this case, after defendant stated during the colloquy that he had not discussed immigration consequences with his attorney, the Court asked defendant whether he "want[ed] to take some time, a few minutes or longer, to discuss this issue now?" Tr. 10/3/11 at 26:9-14. Defendant declined the Court's offer because he "understood the situation." *Id.* Defendant was thoroughly informed of the potential consequences of his plea and decided to proceed without asking

questions, and thus cannot meet his burden of proving that he would have insisted on going to trial had he discussed deportation with Ms. Laguzzi prior to the hearing.

Additionally, defendant cannot claim prejudice as a result of entering a guilty plea because he was already subject to deportation before he was indicted in this case. *See, e.g.*, *Gutierrez v. United States*, No. 1:10-cv-2748-JECRGV, No. 1:07-cr-0051-JEC-RGV-1, 2013 WL 593796, at *4 (N.D.Ga. Feb. 15, 2013) ("[I]f the defendant already knew prior to his plea that he would probably be deported after completing his prison sentence, his attorney's failure to reiterate that point could not have prejudiced him."); *see also United States v. Sinclair*, 406 Fed. App'x. 674, 675 (4th Cir. 2011).

Prior to entering his guilty plea on October 3, 2011, defendant had already been convicted of two deportable offenses in Massachusetts.[2] Presentence Investigation Report, Revised Jan. 30, 2012, at 12-13. Although an Immigration Judge granted defendant temporary protection against deportation on August 21, 2007 under the United Nations Convention Against Torture,[3] the Immigration Judge advised defendant at that time that such relief is "not a grant of any status . . . It is simply a mechanism that permits [defendant] to remain in the United States, perhaps even in custody, until [he] can safely be returned to [his] native country." *United States*

---

[2] On September 27, 1995, defendant plead guilty to three counts of drug-related offenses in the United States District Court for the District of Massachusetts. Presentence Investigation Report, Revised Jan. 30, 2012, at 12. He was incarcerated for those crimes until March 30, 2001, when he was transferred to the custody of Immigration and Customs Enforcement and deported to Haiti on May 14, 2001. *Id.* Thereafter, defendant returned to the United States and was arrested on December 27, 2005. *Id.* On January 24, 2007, defendant plead guilty to illegal reentry of a deported alien and possession and uttering of counterfeit currency, again in the District of Massachusetts. *Id.* He was sentenced to time served (approximately eighteen months) and thirty-six months of supervised release on those charges, which he completed in the Eastern District of Pennsylvania on March 15, 2010. *Id.* at 12-13.

[3] After being arrested in 2005, defendant filed a petition to withhold removal or, alternatively, for temporary protection under the United Nations Convention Against Torture. *United States v. Claude*, No. 12-cr-33, slip op. at 4 (E.D. Pa. Apr. 13, 2012) (DuBois, J.). An Immigration Judge denied the petition for withholding removal but granted temporary protection. *Id.*

*v. Claude*, No. 12-cr-33, slip op. at 4 (E.D. Pa. Apr. 13, 2012) (DuBois, J.).  Thus, when defendant plead guilty in this case on October 3, 2011, defendant "kn[ew], based on the Immigration Judge's statements [in 2007], that federal authorities intend[ed] to remove him to Haiti when it [became] safe to do so."  *Id*. at 12.

For all of the aforementioned reasons, defendant has not shown prejudice.  Thus, defendant's Motion under 28 U.S.C. § 2255 is denied on the merits.[4]

## V.    CONCLUSION

For the foregoing reasons, the Court denies defendant's Motion to Set Aside, Vacate, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255.  An evidentiary hearing is not required because the record "conclusively show[s] that [defendant] is entitled to no relief."  28 U.S.C. § 2255(b).  Furthermore, a certificate of appealability will not issue because reasonable jurists would not debate this Court's decision that defendant's Motion does not state a valid claim of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.473, 484 (2000).  An appropriate order follows.

---

[4] By reason of this disposition, the Court does not address the question of whether the Motion was timely filed.